673 So.2d 1366 (1996)
Songa Morris GOSS, Plaintiff-Appellee,
v.
Jimmy Graydon GOSS, Defendant-Appellant.
No. 95-1406.
Court of Appeal of Louisiana, Third Circuit.
May 8, 1996.
*1367 Randy J. Fuerst, Lake Charles, for Songa Morris Goss.
Frank Alton Granger, Homer Carleton Singleton Jr., Lake Charles, for Jimmy Graydon Goss.
*1368 Before THIBODEAUX, SAUNDERS and AMY, JJ.
AMY, Judge.
This appeal arises from a rule filed by Songa M. Goss in which the trial court found that Jimmy G. Goss owed $18,260.00 in past-due child support; $1,044.00 for his share of past-due health insurance premiums; and $140.74 for his share of past medical expenses not covered by insurance. The trial court found Mr. Goss in contempt of court and awarded Songa M. Goss $2,500.00 in attorney's fees. The trial court also found a change in circumstances and increased Mr. Goss' child support obligation from $510.00 per month to $673.00 per month. From this judgment, Mr. Goss appeals.

DISCUSSION OF THE RECORD
On November 26, 1986, Songa M. Goss filed a petition for divorce against Jimmy G. Goss. The divorce was granted on January 23, 1987. The judgment included an order for Mr. Goss to pay: child support in the amount of $300.00 per month, $150.00 per child for their two minor children; 60% of the premiums for medical insurance on the two children; and 60% of medical expenses not covered by insurance.
On November 14, 1991, Songa filed a petition to increase the child support. A hearing officer from family court recommended that the child support be increased to $465.00 per month, retroactive to December 1, 1991. The recommendation was signed on January 6, 1992. On January 12, 1992, Mr. Goss made a payment of $505.00 which he testified was for child support pursuant to the recommendation of the hearing officer and also for his share of the medical insurance premiums. On January 14, 1992, Songa requested a hearing before the district court. A hearing was held on March 5, 1992, and at that hearing it was agreed and stipulated that Mr. Goss would pay $255.00 per child each month, for a total of $510.00 per month. It was also agreed that Mr. Goss would be responsible for 60% of the premiums for medical insurance covering their two minor children, along with 60% of all medical expenses incurred and not covered by the insurance. Mr. Goss has made payments each month since January of 1992 ranging from $465.00 to $516.00.
On December 22, 1992, Songa filed a petition for judicial partition of community property. The community property was partitioned by order of the court on September 23, 1993. In the partition, the trial court, gave Mr. Goss a credit of $30,971.61, for some payments made to Mrs. Goss since the divorce. The trial court concluded that this money was for house payments, not child support. Therefore, the record establishes, that Mr. Goss made no child support payments from the date of the divorce until January 12, 1992.
On February 10, 1994, Songa filed a "Rule For Contempt, Backdue Child Support, Medical Bills and Attorney's Fees and For Increase in Child Support." Based upon the trial court's previous ruling in the partition of the community property, the court found that Mr. Goss had paid no child support from the time of the divorce until January of 1992, and also that Mr. Goss' payments from January of 1992 until the time of trial were insufficient. Therefore, the court ordered Mr. Goss to pay $18,260.00 in past due child support. The trial court also found that Jimmy owed Songa $1,044.00 for his share of the medical insurance premiums and $140.74 for his share of medical expenses not covered by insurance. The trial court found Jimmy in contempt of court for his failure to pay the child support and medical expenses and awarded Songa $2,500.00 in attorney's fees. The trial court also found a change in circumstances based upon Mr. Goss' voluntary underemployment and increased his child support obligation to $673.00 per month retroactive to February 10, 1994.
In his appeal, Mr. Goss asserts that the trial court erred in: (1) finding that he was voluntarily underemployed and by using an average of his past five years' income as a basis for determining his child support obligation; (2) finding that he owed $1,044.00 for his share of health insurance premiums; (3) finding that he owed child support during a period of time in which he and Songa lived together and jointly supported the children; (4) increasing his child support obligation *1369 based upon evidence not in the record; (5) finding that he had not paid his share of the medical expenses not covered by the medical insurance; (6) finding him in contempt of court; and, (7) assessing Songa's attorney's fees at $2,500.00.
Additionally, Jimmy has filed a peremptory exception of prescription with this court arguing that child support arrearages which accrued from December 1, 1986 through February 9, 1989 have prescribed.

ANALYSIS
Peremptory Exception of Prescription:
Appellant has filed a peremptory exception of prescription, for the first time on appeal, alleging that any claim for arrearages due prior to February 10, 1989 have prescribed. A peremptory exception of prescription can be filed at any level of the proceedings prior to submission of the case for decision; therefore, appellant's exception was timely filed. In re Ponchatalawa, Inc., 428 So.2d 993 (La.App. 1 Cir.1983).
According to La.Civ.Code art. 3497.1, "[a]n action to make executory arrearages of spousal or child support ... is subject to a liberative prescription of five years." Therefore, Songa's claims for arrearages accruing prior to February 10, 1989 have prescribed unless there had been an interruption of prescription.
Appellee argues that there has been an interruption of prescription. Songa argues that by openly admitting the existence of the child support obligation through testimony, Jimmy has acknowledged the debt and therefore prescription has been interrupted. We disagree. According to La.Civ. Code art. 3464, "[p]rescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe." Although, Mr. Goss did admit through testimony that he owed child support pursuant to the order dated January 23, 1987, he did so after Songa's claim had already prescribed. Acknowledgment must occur before prescription has run in order for it to interrupt the prescription. Burdin v. Burdin, 171 La. 7, 129 So. 651 (1930); Succession of Slaughter, 108 La. 492, 32 So. 379 (1902); Beatty v. Vining, 147 So.2d 37 (La. App. 2 Cir.1962).
Alternatively, Songa argues that a support payment made pursuant to the order to pay child support interrupts prescription, Copper v. Copper, 93-1438 (La.App. 3 Cir. 6/1/94), 640 So.2d 737, writ denied, Cooper v. Cooper, 94-1785 (La. 10/7/94), 645 So.2d 211[1]; therefore, Mr. Goss' payment of $505.00 on January 12, 1992 interrupted prescription as to her claim for arrearages. We disagree. After a review of the record, we conclude that the support payment made on January 12, 1992 was made pursuant to the recommendation of the family court hearing officer to grant the motion for an increase in support payments and order Mr. Goss to pay $465.00 per month along with 60% of medical insurance premiums and medical bills not covered by the insurance. The recommendation was made on January 9, 1992, and a hearing in the district court, which can be had at the request of each party, was not requested until January 14, 1992. Furthermore, Mr. Goss testified that the $505.00 payment represented child support and the insurance premium pursuant to such recommendation. Because we find that the payment of January 12, 1992 was made pursuant to the modification, we conclude that it did not interrupt prescription as to claims for arrearages under the original child support order of January 23, 1987. Payments made pursuant to an order which modifies a previous award of child support do not serve to interrupt prescription for claims based upon the previous order to pay child support. See Copper, 640 So.2d 737.
Based upon the foregoing, we conclude that the action to make executory arrearages of child support prior to February 10, 1989 has prescribed. The peremptory exception of prescription is granted with respect to those claims.
Abatement of Child Support While Living Together:
In appellant's third assignment of error, he asserts that the trial court erred in *1370 ordering him to pay past-due child support for time periods in which he and Songa lived together and jointly supported their children. The record establishes that Jimmy and Songa lived together in Sulphur from March of 1987 to January of 1988. The record also establishes that they lived together in New Jersey from June of 1988 until April of 1989, and that after Songa left New Jersey in April, the children remained with Mr. Goss until July 1, 1989. Since we have already held that all claims for arrearages prior to February of 1989 have prescribed, we need only discuss whether Mr. Goss should be equitably relieved of his obligation to pay past-due child support which accrued between February 10, 1989 and July 1, 1989.
The general rule is that child support remains in full force and effect in favor of the party to whom it is awarded until the party ordered to pay has the judgment modified or terminated by a court, or until the parties have entered into a conventional obligation regarding the support award. Byrd v. Byrd, 617 So.2d 182 (La.App. 3 Cir.1993). The only way to satisfy an obligation to pay child support is to pay the party to whom it is awarded. Id. However, courts have held that child support can be suspended by implied agreement, where it is found that the mother delivered the physical custody of the children to the father, even though she did not specifically agree to the suspension of the support payments. See Hendricks v. Hendricks, 594 So.2d 1129 (La.App. 3 Cir.1992), citing, Bagby v. Dillon, 434 So.2d 654 (La. App. 3 Cir.), writ denied, 440 So.2d 150 (La.1983); Sims v. Sims, 422 So.2d 618 (La. App. 3 Cir.1982), writ denied, 427 So.2d 870 (La.1983). The decision regarding suspension of child support based upon an implied agreement is within the trial court's discretion and is determined on a case by case basis. Hendricks, 594 So.2d 1129.
Evidence was presented at trial on this issue; however, the judgment and the written reasons for judgment are silent as to this question. "Silence in a judgment as to any part of a demand made in litigation is construed as a rejection of that part of the demand." Hendricks, 594 So.2d at 1130. Therefore, we must decide whether the trial court abused its discretion by awarding Songa past-due child support during the period of time in which the parties lived together along with their minor children and also during the time in which the children resided with Mr. Goss alone.
We have carefully scrutinized the record and have concluded that the trial court did abuse its discretion. During the time the parties lived together in New Jersey, they were both employed. Both of their earnings were deposited into the same account and expenses were paid from such account. Also, after Songa returned to Louisiana, the children continued to live with Mr. Goss until July 1st. During that time, Mr. Goss provided the sole support for the children. We conclude that the amount which Mr. Goss expended from February 10, 1989 to July 1, 1989, for the provision of shelter, food, utilities, etc. more than offset the amount of child support due, which at the time was $300.00 per month. Therefore, we conclude that Mr. Goss is entitled to a credit for the child support owed from February 10, 1989 to July 1, 1989.
Based upon evidence in the record and upon our disposition of the peremptory exception of prescription and appellant's third assignment of error, we conclude that Mr. Goss was in arrears at the time of trial in the amount of $8,754.00. This total amount represents child support of $300.00 per month for July of 1989 through November of 1991, and also $510.00 for December of 1991, totaling $8,610.00. It also represents $144.00 in arrearages for January of 1992 until the time of trial.
Past-Due Medical Expenses:
Appellant, in his fifth assignment of error, asserts that the trial court erred in finding that he had not paid his share of the medical expenses not covered by insurance and ordering him to pay $140.74. We disagree.
After a review of the record, we conclude that there is a reasonable basis in the record for the trial court to have concluded that this amount was due by Mr. Goss. Therefore, we find no manifest error. This assignment of error is without merit.
*1371 Increase in Child Support:
On February 10, 1994, Songa requested an increase in child support based upon a change in circumstances. From a review of the trial court's written reasons for judgment, it is apparent that the sole basis for the trial court's conclusion that there was a change in circumstances was its conclusion that Mr. Goss was voluntarily underemployed. Once it concluded that Mr. Goss was voluntarily underemployed, the trial court used an average of the past five years of tax returns to determine Mr. Goss' potential income and ordered an increase in Mr. Goss' child support obligation from the previous $510.00 per month to $673.00 per month.
In his first assignment of error, appellant asserts that the trial court committed manifest error in concluding that he was voluntarily underemployed. We agree.
According to La.R.S. 9:315(6)(b), "[a] party shall not be deemed voluntarily unemployed or underemployed if ... the underemployment results through no fault or neglect of the party." Songa relied on the following to prove that Mr. Goss was voluntarily underemployed: (1) Mr. Goss never joined the local union in New Jersey and remained a member of the Lake Charles union and therefore worked as a "traveler." As a consequence he would not get the better paying jobs or possibly any jobs which came through the union in New Jersey; (2) he was now working as a carpenter making $11.00 an hour and working 40 hours per week, which is considerably less than his potential as a qualified heavy machine operator; (3) he did not move back to Lake Charles where she alleges he could have obtained a better paying job.
However, Mr. Goss testified that the New Jersey union would not allow new members because of the depressed economy. He also testified that his job as a carpenter was all that he could find for the time being. Furthermore, Songa's assertion that he should have moved back to Lake Charles to find better work finds no support in the record. The record is void of any evidence tending to establish that Mr. Goss could have obtained such employment in Lake Charles.
Based upon the foregoing, we conclude that Mr. Goss' underemployment was through no fault or neglect on his part; therefore, he was not voluntarily underemployed within the meaning of La.R.S. 9:315(6)(b). Accordingly, we find that the trial court committed manifest error. Since Mr. Goss' alleged voluntary underemployment was the only reason the trial court ordered an increase in child support payments, we vacate the trial court's decision and reinstate Mr. Goss obligation to pay $510.00 per month pursuant to the order dated March 1992.
Mr. Goss also asserts that the trial court erred by ordering him in its judgment of July 27, 1995 to pay 60% of the medical insurance premiums in addition to $673.00 per month since the child support worksheet indicates that the medical insurance premiums were included in the $673.00 per month. Because we have found error in ordering an increase and have accordingly vacated the order increasing Mr. Goss' child support obligation, this assignment of error is moot.
Contempt of Court:
In appellant's sixth assignment of error, he asserts that the trial court erred in finding him in contempt of court for failure to pay child support as ordered by the court, and also for failing to pay his share of the medical insurance premiums and medical expenses not covered by insurance.
According to La.Code Civ.P. art. 224(2), wilful disobedience of any lawful judgment or order of the court constitutes a constructive contempt of court. "Wilful disobedience is an act or failure to act that is done intentionally, knowingly and purposefully, without justification." Widman v. Widman, 93-613 (La.App. 3 Cir. 2/2/94), 631 So.2d 689, 693. Finding someone in contempt of court is within the trial court's great discretion. Id.
After a review of the record, we find no explanation for Mr. Goss' failure to pay child support from July 1, 1989 until January 12, 1992. Nor do we find any explanation for his failure to pay his share of the medical insurance premiums. We therefore cannot conclude that the trial court abused its great *1372 discretion in finding Mr. Goss in contempt of court. Therefore, this assignment of error lacks merit.
Attorney's Fees:
In his seventh assignment of error, Mr. Goss asserts that the trial court erred in assessing Songa's attorney's fees at $2,500.00.
La.R.S. 9:375(A) provides that "[w]hen the court renders judgment in an action to make executory past-due payments under a spousal or child support award ... it shall, except for good cause shown, award attorney's fees and costs to the prevailing party." The amount of attorney's fees to be awarded in an action for child support arrearages is within the sound discretion of the trial court. Ourso v. Ourso, 490 So.2d 545 (La.App. 4 Cir.1986). After a review of the record, we conclude that an award of $2,500.00 to Songa for attorney's fees was within the sound discretion of the trial court.

DECREE
For the foregoing reasons, we hereby: grant appellant's exception of prescription; amend the trial court's award of child support arrearages to $8,754.00, together with legal interest from date of trial until paid; reverse the trial court's finding of voluntary underemployment and set aside the order for an increase in child support, thereby reinstating the order of March 1992; and affirm the judgment of the trial court in all other respects. All costs are assessed to appellant, Mr. Jimmy Graydon Goss.
EXCEPTION GRANTED; REVERSED IN PART; AMENDED IN PART; AND AFFIRMED IN PART.
NOTES
[1] Although the case title is spelled differently, this is the same case.